47 F.3d 1156
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Sharon McGUIRE, Plaintiff, Appellant,
v.
SUNDAY RIVER SKIWAY CORPORATION, Defendant, Appellee.
 No. 94-1978
 United States Court of Appeals,
First Circuit.
 March 1, 1995
 
 Appeal from the United States District Court for the District of Maine [Hon. D. Brock Hornby, U.S. District Judge ]
 John G. Connor with whom Law Office of John G. Connor was on briefs for appellant.
 Evan M. Hansen with whom Elizabeth J. Wyman and Preti, Flaherty, Beliveau & Pachios were on brief for appellee.
 D.Me.
 AFFIRMED.
 Before SELYA, CYR and BOUDIN, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellant Sharon McGuire, a novice skier, suffered a serious knee injury when she fell during a lesson on a beginner slope operated by the appellee Sunday River Skiway Corporation. McGuire brought this diversity action against Sunday River. The complaint, as eventually amended, contained six counts and several different theories of wrongdoing. Ultimately, the district court granted summary judgment in favor of Sunday River and dismissed the case.
 
 
 2
 The facts are set forth in the district court's 11-page opinion, and it is unnecessary to recount them. Although the appeal has been effectively briefed at some length by McGuire, we think that the district court's decision is correct and that little would be gained by restating the district court's reasoning in somewhat different words. Two points, however, may usefully be added to what Judge Hornby has said.
 
 
 3
 Much of McGuire's argument on appeal is directed to the admitted failure of her instructor or anyone else employed by Sunday River to warn her that even a beginner, skiing in generally safe conditions under proper instruction, can suffer a mishap and a serious injury. The district court held, as we have ourselves held in an earlier case, that the failure to warn claims-based on the inherent dangers of skiing-are severely limited by Maine's Skiers' and Tramway Passengers' Responsibilities Act, 26 M.R.S.A. Sec. 488 (1991). See generally Finnern v. Sunday River Skiway Corp., 984 F.2d 530, 533 (1st Cir. 1993).
 
 
 4
 Section 488 in pertinent part declares that skiing "may be hazardous to skiers ... regardless of all feasible safety measures" and except as otherwise provided
 
 
 5
 each skier ... shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agents or employees.
 
 
 6
 As we said in Finnern, this provision essentially means that a ski area has no duty to warn a skier of the dangers inherent in skiing. 984 F.2d at 537. McGuire's injury, apparently resulting from the failure of a ski binding to release as she fell, is a common danger in skiing.
 
 
 7
 McGuire's brief on appeal argues inventively that the assumption of the risk doctrine at common law shifted the risk of dangers that were apparent to the person who assumed the risk. As a beginner, says McGuire, she was ignorant of the danger and therefore cannot have assumed it. Indeed, it is the failure to warn her of such a risk that is at the core of her negligence claim. In reviewing a grant of summary judgment, such facts may reasonably be assumed in favor of McGuire.
 
 
 8
 But whatever the common-law tradition may be, Maine's statute does not say that the risks assumed are those known to the particular skier. That statute declares that the sport is dangerous, and makes the skier assume the risk of the dangers "inherent in the sport." Neither the language nor the context of this provision suggests that subjective knowledge on the part of the injured skier is required. An earlier portion of section 488 makes it crystal clear that it embraces the least experienced of skiers.
 
 
 9
 Although the statute cuts off a naked failure to warn claim in the present case, McGuire also alleges that she actually inquired about the risks of injury in a beginner class and her ski instructor replied with a series of what the district court called "encouragements" (e.g., we are going to have a good time, nothing is going to happen). On appeal, McGuire stresses that the instructor also said that no one had ever been hurt in her class. Even if literally true, says McGuire's brief, this statement affirmatively created a false impression since injuries occur with some regularity even in beginner classes.
 
 
 10
 The Maine statute does not purport to shield false statements, but we think that in this instance there is very little difference between the supposed false impression and a simple failure to warn. McGuire was a grown-up with some knowledge of the world; quite apart from the ski equipment rental agreement she had just signed (warning "that there is an inherent danger in the use of any ski equipment"), she-or at least the hypothetical reasonable person-had to know that skiing involves some dangers.
 
 
 11
 In all events, the instructor never said that dangers were entirely absent. She made soothing sounds and said that no injury had been suffered by her students in the past. What was left out may have mattered; perhaps a vivid and precise description of the frequency and severity of injuries among beginners would have deterred McGuire. But the omission is precisely what the Maine statute protects in the case of ski resorts. Doctors may envy the Maine statute but it is not unconstitutional for the legislature to draw such lines. See, e.g., Choroszy v. Tso, 647 A.2d 803, 806-07 (Me. 1994) (discussing the open courts and equal protection provisions of the Maine constitution).
 
 
 12
 Affirmed.